Our next case for argument this morning is Hope v. Indiana Department of Corrections. Mr. Barnett. May it please the court. Indiana's Ex Post Facto Clause permits SORA's application to sex offenders registered in other jurisdictions, but exempts pre-SORA sex offenders never before required to register anywhere. The District Court held that distinction lacks a rational basis because both groups pose an equal danger to the public, but that misses the Ex Post Facto Clause's point. It seeks to avoid imposing substantial new criminal consequences for past crimes, and exempting offenders already subject to substantially the same consequences wouldn't advance that goal. The plaintiff's response is that the Ex Post Facto Clause really seeks to quote, and run, right to travel protections, but this court's en banc decision forecloses that argument. It held that the Ex Post Facto Clause doesn't violate plaintiff's right to travel, does not discriminate on residency, and further rejected the argument that the federal constitution condemns laws that merely have a disparate impact on people who have traveled interstate. The court should uphold SORA as applied to the plaintiffs. I will start with addressing the District Court's error before returning to the plaintiff's alternative argument. A central plank of the decision below in the plaintiff's argument on appeal is that any exemption to SORA must promote public safety to be rational. As the U.S. Supreme Court held in Fitzgerald, however, not every provision in a law must advance a single purpose. In fact, most laws predominantly serve one general purpose while having other provisions that promote other secondary and even contrary purposes. Mr. Barta, can you please address the District Court's statement that you disclaimed any interest in fair notice by itself? Yes, Your Honor. So I think that is just a misunderstanding of what the state argued. Because at ECF 149.11, ECF 145 at 13, the state expressly argued that it struck a constitutionally sound balance between protecting the public on the one hand and the important constitutional principles of fair notice undergirding the Indiana Supreme Court's decisions in Tyson, Survey, and Ammons. And even in the footnote Your Honor mentions, the District Court acknowledges the state has made that point, quote, repeatedly. And I think the District Court just simply, you know, mischaracterized the state's argument as saying the state is trying to register as many people as possible while respecting the ex post facto clause, instead of understanding that the ex post facto clause itself pursues a different goal in distinguishing between people who have registered in other states and never before required to register. And I think, you know, the clearest example of this is the Indiana Supreme Court's decision in Tyson, which provides an extensive reasoned application of why exempting offenders already under similar obligations and subject to the same resulting stigma wouldn't advance the ex post facto clause's goal of avoiding, you know, retroactive imposition of substantial new criminal consequences for past crimes. And it walks through the seven Mendoza-Martinez factors explaining why the fact of registration in another jurisdiction matters to each. It would be truly extraordinary to hope that that reasoned judicial analysis lacks a rational basis, because rational basis is at its most generous when defining the class of person subject to a regulatory requirement. And there has been no attempt, not by the district court, not by the plaintiffs, to show that no rational judge could decide Wallace one way, Tyson, Zerbe, and Ammons another. The plaintiffs instead hypothesized at pages 42 and 43 of their brief that an unspecified number of people who are registered for, quote, only a few hours or might primarily be concerned about restrictions on entering schools might find SOAR particularly onerous. But those concerns have nothing to do with whether the line drawn is rational for the vast majority of offenders. And rational basis review requires a court to accept a decision maker's generalizations, even when there is an imperfect fit between means and ends. You know, so in the briefing, the plaintiffs sort of pivot to this alternative argument, that the Indiana's ex post facto clause really pursues an illegitimate goal of, you know, in running right to travel protections. But that not only ignores the Indiana Supreme Court's construction of the state constitution, which explains that the ex post facto clause pursues a different goal. It also contravenes this court's prior decision. In its en banc decision, this court held that the ex post facto clause does not violate the plaintiff's right to travel. It expressly rejected the argument that the ex post facto clause treats offenders differently based on when they became residents. And it further rejected the idea that laws having disparate impact on people who have traveled interstate violate the federal constitution. In rejecting that theory, the court- Mr. Barta, I'm worried about something the parties haven't discussed. And I want to ask this question of both you and of Mr. Rhodes. My question is, does anything in this case matter, given the federal Sex Offender Registration and Notification Act, which appears to require all of the plaintiffs to register in Indiana? Yes, Your Honor. I think that that is a point where the record is unclear, because the federal statute requires people who have traveled interstate to register, but has an affirmative defense for situations in which registration would not be possible. And, you know, there is a question that has not been resolved by the Indiana courts as to whether the ex post facto clause would prevent state officials from registering people who voluntarily show up and say, we recognize you can't require us to register under state law, but we nonetheless wish to be placed on the registry so we don't run afoul of federal law. Or whether the clause would be construed to prohibit that. Has the Supreme Court of Indiana held that in its view the federal statute is unconstitutional? It is not- It can't hold the federal statute unconstitutional under a state constitutional provision. It would have to do it under the federal constitutional provision. And that, of course, would not be consistent with Smith or with our en banc decision. So I think we have to assume that the federal statute would operate to require these plaintiffs to register. And that's why I'm asking, does anything turn on the difference between registering under the federal statute and registering under the state statute? So two responses, Your Honor. I agree with your point that the state constitution can't invalidate the federal statute. The only point I was trying to make is there may be an open question as to what state officials are allowed to do under the state constitution. But in terms of the practical impact, the federal registry, it may be sort of an offense-by-offense basis as to what practical impact there is. Because the federal registry sometimes can have different required registration for different lengths of time. And I'm not certain they have all the- Depending on the seriousness of the underlying offense. Correct. And there may be- One reason why I ask this is it looked like all of these plaintiffs would be in the serious federal category. But maybe I'm wrong about that. I'm not- I don't know the answer to that question. Okay. Look, I don't want to take too much time from your argument. But Mr. Rowe should take this as a warning about my concern. Okay. Please proceed. Are the registration requirements different between the state and federal? The Indiana state registration requires certain offenders to go back multiple times. And I'm not sure if the federal requires the same thing. I don't know if you know. I believe offhand that the federal is just a requirement to register. I don't believe there are the same sort of granular requirements about frequency or some of the collateral restrictions on, you know, what you might have to do if you're absent from your home for a certain period of time or homeless. So I think- In other words, registration under the federal statute might be less annoying. It may be. Okay. The- you know, but the- so I think, you know, this really comes back to the en banc decision making clear that just because someone is registered in another state, that is not an illegitimate purpose that the- you know, or does not somehow render the Indiana's ex post facto clause pursuit of avoiding imposing substantial new consequences illegitimate. One final point I would- or observation is that I think the district court, even if one accepts the district court's understanding of disclaimer, which as mentioned I don't think is a fair reading of the record, that it is very hard to square the district court's characterization that the state is trying to register as many people as possible while respecting the state constitution with this court's decisions. In McCann, Speed, and Saunders, this court made clear that necessity alone can provide a rational basis for creating an exemption to a law. And even if it is legitimate to adopt an exception out of necessity, it is surely legitimate to adopt a constitutionally mandated exception supported by judicial reasoning while still trying to protect the public. If there are no further questions, I will preserve the remainder of my time. Thank you, counsel. Mr. Rose. Thank you, Your Honor. May it please the court. Having taken Judge Easterbrook's hint, I will begin with a SORNA question. We obviously are well aware of SORNA. This is a challenge to state law. I know that it's a challenge to state law. I'm just wondering what you think is in it for your clients, given the federal statute, unless you think the federal statute is also unconstitutional. I do not, Your Honor. There are significant differences between registration under state law and under federal law. SORNA, it's my understanding, requires you to register once, and then, again, if your information changes, it doesn't require you to go back every 7, 90, 365 days. Obviously, we're talking here about not being allowed into schools, limitations on where you can live, where you can work. Even the information— Okay, so you think the state registration requirement is more onerous substantively than the federal requirement, as well as more annoying procedurally. I do think it is, Your Honor. There are significant differences between the two. I do agree with Mr. Barta that there's a defense built in when state officials cannot actually register you, pursuant to their own state constitutions that they need to abide by, and SORNA is, I don't want to say unique because I'm not aware of every statute out there, but it certainly relies on state officials for the purposes of registration in a way that federal— Has Indiana asserted the potential federal defense that it can't be conscripted as a registrant? They have not asserted— Right, that would be a defense as a matter of federal law, but they have not asserted that. That's correct, Judge. The bottom line in this case, and we're obviously well aware of the scrutiny, the low-level scrutiny applies to any governmental classification, but in order to reverse the district court, this court needs to conclude that there is a state interest in discriminating against two groups of people for no reason other than the fact that one group of persons have at some point in their lives— I must say I find it very hard to characterize what's going on that way. The statute unambiguously requires everybody with a certain conviction to register, and the Supreme Court of Indiana has said a subset of them, as a matter of state constitutional law, can't be required to register. How is that discriminating against anyone? The statute is comprehensive. Judge, if the Indiana Constitution had said explicitly persons in Class A need to register, persons in Class B do not have to register, I don't think there would be any question that that constitutional provision is subject to review under the Equal Protection Clause. For all intents and purposes— No, look, don't get me wrong. I'm not denying that this is subject to review. Anything is subject to review under the Equal Protection Clause, and our decision on Bonk was quite explicit. What I was questioning is why one describes the exemption of one set of persons as a form of discrimination when the statute is comprehensive. Normally, one would say if you single out somebody, you might call that discrimination, but the statute doesn't single out anyone—well, singles out people with sex convictions. For all intents and purposes, it does, given that it can only be applied against one group of persons but not the other. What you're asking— Suppose Smith had come out the other way, that the vision of the dissent had been accepted, and that the application to people whose convictions predated the law had been viewed as a violation of the Ex Post Facto Clause or any other clause. Would that have made the Alaska statute unconstitutional? Because at that point, one group was in, one group was out. That was discrimination. And the only reason for the discrimination was a bunch of federal judges' interpretation of the Ex Post Facto Clause. And those are the grandfathering clause cases—McCann, Speed, the City of New Orleans v. Duke case. But the point of those cases— No, I wish you'd address my question. As you're depicting it, if the dissent had prevailed in Smith, the Alaska statute would have become unconstitutional because there was now discrimination against the people whose convictions were newer. Right? Because they had to register. I don't think anybody would have understood that to be a consequence. But what happened here is that Indiana was persuaded by the dissent. The Supreme Court of Indiana took the position adopted by the dissent in Smith, and you say that's what made the Indiana system unconstitutional. So I don't know why it wasn't the dissent in Smith that would have made essentially all of the state registration laws unconstitutional. And I apologize, Your Honor. I was attempting to answer the question. The reason that you can say we're going to enforce a statute, the Alaska statute in Smith, prospectively but not retroactively, isn't that equal protection doesn't apply. It's that there is a governmental interest that this Court recognized in cases such as McCann and Speed in essentially fulfilling its promise. There's a reliance interest that justifies the discrimination here. We are not talking about a prospective versus retroactive distinction. We're talking about someone who committed the exact same offense on the exact same day, even in the exact same place, may have received the exact same penalty, may even have begun interacting with Indiana on the exact same date, the person who vacations in Colorado versus Texas and then comes back, the person who moves from Maine or Alaska. And only one of those persons is subject to- And who also moved across state lines after being required to register. Look, I don't want to argue about this, but what the Supreme Court of Indiana is trying to do is figure out how, for purposes of the dissent in Smith, which they have adopted, how to define who's being punished. And they come up with a definition that's different from the majority in Smith and different from the definition you would obviously prefer. But isn't it a stretch to say that the definition the Supreme Court of Indiana came up with is positively irrational, that no reasonable person could imagine any basis for it? Obviously, we're not in a position to question the Indiana Supreme Court's interpretation of it. But you are. And in fact, the district court said that the distinction drawn by the Supreme Court of Indiana is irrational and unconstitutional. That's the holding in this case. Applying equal protection analysis that was not at issue in the ex post facto cases. In any equal- That's why I- Well, I won't belabor this, but that's why I asked the question about Smith. If you took the view of the dissent in Smith, which Indiana did, you have all sorts of definitional problems, right? And then you start having the sort of problems in this case. Indiana resolved those problems in a particular way. And the district court said that the way the Supreme Court of Indiana resolved the problems entailed in adopting that view are irrational. Maybe they are, but we should own up to the fact that we have a federal district judge who has called the Supreme Court of Indiana irrational. What the Indiana Supreme Court has done is it has adopted the dissent in Smith as to some persons but not as to others. Every single person we're talking about is a pre-SORA offender. Every single person committed their offense before Indiana enacted its statute. Many of them were told by the state now on remand that it does not matter even if you moved to Indiana before the other jurisdiction requirement came into effect or even before SORA itself was enacted. Judge Easterbrook, I really can't get around the question. I do believe that what the Indiana Supreme Court did was create an equal protection violation in interpreting it. And if it did, our choice is clear. Although if we hold that the Supreme Court of Indiana acted irrationally, we force the Supreme Court to grant certiorari. There would be no way around that. I don't know that that's true, Your Honor. But obviously this court has to answer the question as to whether it is rational to treat this one class different from this other class. And I don't think simply saying because the Indiana Supreme Court said it's okay under the state's ex post facto clause, I don't think that satisfies equal protection scrutiny. My example still stands. If we had actually written this explicitly into the Indiana Constitution, we still have to ask is there a legitimate state interest here? In any equal protection challenge, any equal protection challenge, regardless of the level of scrutiny applied, in order to uphold a statute, there has to be a sentence that says this differential treatment that we're meeting out supports the state's interest in blank. And whatever we put in the blank has to make both practical and, quite frankly, grammatical sense. I have been litigating this case for more than six years now, and I still don't know how the state thinks that sentence ends, other than because the Indiana Supreme Court built us into a box. Obviously the panel was entirely clear since the admittedly vacated panel decision, but not questioned either on bonk or by the dissent in the initial opinion. That's simply not how you speak about state law. You have to ask whether the statute and its enforcement given constitutional constraints is something that is actually rational. I'll go back to the point that I started on, which I really do think that in order to reverse the district court, this court has to conclude that there is a reason to distinguish amongst its own citizens, Indiana's own citizens, for no reason other than the fact that at one point, one of them had interacted with another state. We gave speed limits and marijuana use as an example. My understanding of Illinois law, and I might be wrong, it might just be Chicago, is that there are different, more strict rules on using cell phones while driving than there might be in other states. If another state, whether by the Illinois Supreme Court or whom have you, decided that for some reason persons who travel with Minnesota, Tennessee, and Arizona plates, I'm just making up states here, are exempt from that statute, I think this court would look at the decision makers like they had three heads. But that really is the import of the state's position. You may recall, I think the only question I may have asked at the en banc oral argument was along the lines of, to adapt to your example, what if Minnesota said anybody who has a conviction out of state or in state for improper cell phone use is prohibited from driving for a year? And somebody has such a conviction in Illinois, moves to Minnesota, where what that person did in Illinois would not be a crime, would it violate the Constitution for Minnesota to carry out its penalty for acts that would not be criminal in Minnesota but are criminal in Illinois? Obviously not, and every state has different statutes that constitute sex crimes and they define sex offenses and sex offenders in different ways. There's nothing wrong with deferring to another state's interpretation of who is a sex offender. One would think the full faith and credit statute, not to mention the full faith and credit clause, requires that. And obviously we're certainly not challenging the plaintiff's convictions, but certainly. But this is a case where Indiana is enforcing Indiana laws, not pretending to apply the law of any other state. Some of the plaintiffs, if they had remained in their states of conviction, their requirements would be over by now. If their requirements had actually expired before they came to Indiana, Indiana would still say, you have to register. But none of the plaintiffs in this case are in that position. None of them are in a position where their requirements fully expired in their other states. Two of them, I believe, are in a place where either the requirements would have expired by now or else will expire in the very near future, given the various state laws in effect. As I say, the only thing I've heard from the state is the Indiana Supreme Court painted us into a box. We readily admit that. It's a horrible problem for the state because the Supreme Court of Indiana rejected the argument the executive branch of Indiana was making. And obviously the Department of Correction and the Attorney General's Office would prefer Wallace if it had come out a different way. They don't want to defend. They are forced to defend the reasoning of a decision that they think is wrong. I mean, that's life. They're forced to come up with a rational state interest that supports what admittedly was differential results under the ex post facto clause. The fact that that decision issued is alone not enough to meet that. Thank you very much. Thank you. Anything further, Mr. Berta? Three quick points. First, to be clear, the interest Indiana is pursuing by creating this exemption disorder through the ex post facto clause is to avoid imposing substantial new consequences for past crimes. That is what Wallace says. That is what Tyson says. Second, on the allegation that the ex post facto clause discriminates, this court in its en banc decision at page 525 said that neither SORA nor the ex post facto clause discriminates based on residency. Adopting the view that this is discrimination because people who have a registration obligation in another state must register in Indiana would dramatically expand the right to travel and threaten a host of state laws. One example could be laws, as Judge Easterbrook mentioned, on driver's license. Others, as Nebraska pointed out in an amicus brief submitted in the prior appeal, could be laws requiring people with criminal felony convictions in other states to not be able to possess certain types of firearms and regulatory laws as well. And I think the court could think of a number of examples of other laws that would be threatened, like statutes providing different service requirements for foreign corporations versus domestic ones or statutes perhaps providing different tolling requirements. Third, on the rationality of the distinction here, a rational person who adopted the dissense view in Smith, this really comes down to whether a rational person who adopts the view could nonetheless put limits on it. And I think Tyson makes very clear that a rational judge who views the dissent in Smith as persuasive in some circumstances can nevertheless say someone registered in another state has a weaker ex post facto claim. To uphold this on a rational basis, they don't have to identify a difference in kind as much as one in degree. Just as someone in the city of New Orleans versus Deuce could say someone who has a push cart license for 20 years has a stronger expectation interest than someone who's only had it for seven, that's not a difference in degree. It's one of kind, but it is sufficient on a rational basis. Thank you. Thank you very much to both counsel. The case is taken under advisement.